# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 28, 2010

## STATE OF TENNESSEE v. NICHOLAS RAY TIPTON

**Direct Appeal from the Criminal Court for Washington County**
**No. 33927     Robert E. Cupp, Judge**

---

**No. E2009-02676-CCA-R3-CD - Filed October 11, 2011**

---

The Defendant-Appellant, Nicholas Ray Tipton, was convicted by a Washington County jury of three counts of aggravated rape, a Class A felony. He was sentenced to a twenty-two year term of imprisonment for each conviction, with two sentences to be served consecutively, for an effective forty-four year term of imprisonment in the Tennessee Department of Correction. On appeal, Tipton raises the following issues for our review: (1) whether the evidence was sufficient to support his conviction; (2) whether the three counts of aggravated rape should be merged into a single conviction; (3) whether the trial court erred by allowing an emergency room physician to testify regarding the effect of intoxication on a man's ability to ejaculate; (4) whether the sentence length for each conviction was excessive; and (5) whether the trial court erred by imposing consecutive sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal), Jeffery C. Kelly, District Public Defender; and William Donaldson, Assistant Public Defender, Johnson City, Tennessee (at trial), for the Defendant-Appellant, Nicholas Ray Tipton.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Anthony Wade Clark, District Attorney General; and Dennis Brooks, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.** In this case, S. D., the victim and a paraplegic,[1] was raped by Tipton, her boyfriend at the time of the offenses. While the victim and Tipton have differing accounts of the events leading up to the instant offenses, there is no dispute that Tipton sexually penetrated the victim anally, vaginally, and orally.

At the time of the offenses, the victim was in a serious relationship with Tipton and had previously engaged in consensual sexual intercourse. On the night of the offenses, the victim and Tipton had gone to a restaurant and drank a couple of beers before going to a hotel bar. They "ordered another couple of beers" at the hotel bar. The victim claimed she drank a total of three or four beers that night. At around 9:15 or 9:30 p.m., the victim went to the front desk of the hotel and inquired about a room. She decided to stay at the hotel because of its convenience for work the next morning. The victim testified that she went to the hotel room with Tipton and gave him the spare room key. The victim remained in the hotel room, got ready for bed, and Tipton returned to the hotel bar.

Around 10:30 p.m. that same night, the victim received several text messages from Tipton wanting to know her room number. The victim told Tipton to "stay away," and she fell asleep. The victim said she woke up sometime later and Tipton was standing over her, removing her clothes. The victim told Tipton to leave her alone; however, he became more aggressive and violent. The victim stated:

> I told him I was going to call the police. At that point he pulled the phone out of the wall. He took my cell phone and snapped it into [sic], and then he said, bitch, now you try to call the police. And then he just started really taking off my clothes very aggressively.

The victim continued and testified that Tipton grabbed her throat and penetrated her vagina with his penis. She stated, "He choked me very hard. I could barely breathe." She was slapped in the face and called many derogatory terms. The victim said Tipton became upset when he was unable to ejaculate. She testified that Tipton penetrated her anally with his penis and eventually put his penis in her mouth. The oral penetration caused the victim to gag and vomit. Tipton was angered when the victim vomited and began to choke her again. The victim stated:

> He kept saying, I'm going to jail. I'll do whatever I want to do to you, bitch. I'll do whatever I want. And he said that–he kept saying that. He . . .

---

[1] It is the policy of this court to omit the names of victims of sexual offenses. The victim explained that she was confined to a wheelchair as a result of a motor vehicle collision that occurred several years before the present offenses.

couldn't ejaculate and it just made him more mad, and . . . he just kept hitting me harder and harder.

Tipton struck the victim again in the face. The victim had bruises on her neck and chest. The victim thought she possibly lost consciousness during the attack. She said Tipton repeatedly threatened to tie her up, gag her, and run away. The victim thought that she was going to die. In an effort to end the attack, the victim told Tipton that she loved him and that they should go to sleep. When Tipton eventually fell asleep, the victim left the room, went to the hotel lobby, and called the police.

The victim testified that she was able to feel Tipton penetrate her vagina and anus despite her paraplegia. As a result of the attack, she had a "busted" blood vessel in her right eye. The victim also had a black eye, a swollen and bruised face, "choke marks" on her neck, and bruises on her right arm and left breast. The victim stated that the sexual pain felt much worse than the beating.

On cross-examination, the victim said she had dated Tipton for about six weeks and denied that they were engaged.

Stacy Tipton, a front desk employee of the hotel, was working on the night of the offenses. During the night, the Defendant-Appellant came to the front desk and requested a room key. He explained that the room was occupied by his girlfriend. The hotel employee said Tipton did not know his girlfriend's room number and was "slightly intoxicated." He became upset when the hotel employee refused to provide a room key. She said Tipton "stormed off angry" and asserted that "he was going to go knock on doors until he found the door he was looking for." The hotel employee testified that roughly two hours later, the victim came to the front desk. The victim told the hotel employee that she had been raped and beaten. The victim asked the hotel employee to call 911 because she needed medical attention. The victim was disheveled in appearance and "very emotional." The hotel employee thought the victim had a black eye. The police arrived at the hotel shortly after the 911 call.

Sergeant Lisa Mominee of the Johnson City Police Department testified that she responded to the 911 call from the hotel. She met the victim in the hotel lobby. Sergeant Mominee described the victim as "completely hysterical." The victim said Tipton "had beat her, tried to choke her, and raped her." Sergeant Mominee said the victim "looked like she'd been beat up[.]" Sergeant Mominee said blood was underneath the victim in the wheelchair.

Dr. William L. Lee, the emergency room physician who treated the victim on the night of the offenses, testified that the victim's chief complaint was that she had been choked. The

-3-

victim also described how she was sexually assaulted. Dr. Lee testified that the victim had "busted" blood vessels on her forehead and cheeks. Additionally, the victim had a sub-conjunctive hemorrhage in her eye. Dr. Lee explained that these injuries may have been caused by strangulation. He said the victim had bruises on her jaw and arms. Dr. Lee was not involved in the sexual assault examination.

Tessa Proffitt, a sexual assault nurse examiner, examined the victim approximately two and a half hours after the offenses occurred. Proffitt corroborated Dr. Lee's testimony regarding the injuries to the victim's face, eye, and arms. She said the victim also had red marks on her wrist and neck. Proffitt testified that the victim's injuries may have been caused by strangulation. She said the examination revealed no injuries to the victim's vagina, rectum, or mouth. Proffitt stated that seventy-five percent of sexual assaults do not result in injury. She testified that no DNA was retrieved from the victim's vagina or anus. Proffitt said her examination showed no evidence of sexual intercourse.

Investigator Mark Stout of the Johnson City Police Department testified that he was the lead investigator in this case. Upon examining the victim's hotel room, Stout observed that the room phone was dislodged from the wall and a broken cellular phone was on the floor. Investigator Stout found blood on the bathroom tile and on the comforter. No tests were performed to determine whose blood was on the comforter. Investigator Stout said vomit was also found in the hotel room. He stated that no tests were conducted to determine the sobriety of Tipton or the victim.

Officer Jada Burkey of the Johnson City Police Department assisted with Tipton's arrest at the hotel. She testified that Tipton was found asleep on a bed in his hotel room. Officer Burkey said Tipton was "completely naked" and "heavily intoxicated."

Tipton testified and denied raping the victim. In large part, he testified consistently with the victim's account of the events on the night of the offenses. However, Tipton claimed that he engaged in consensual vaginal, anal, and oral sex with the victim. He acknowledged that he was intoxicated that night and disputed the amount of alcohol the victim had consumed. He stated that the victim purchased a twenty-two ounce beer on the way to the restaurant and that they each consumed more beers and shots upon their return to the hotel. He further acknowledged that he was unable to ejaculate during the sex because he was too intoxicated.

Tipton stated that after the sexual activity, they had an argument about his decision to return to the hotel bar earlier that night. Tipton said the victim "was getting loud," and he put his hand over her mouth. The victim bit Tipton, and he responded by smacking her across the face. Tipton continued to smack the victim, they began to wrestle, and eventually

-4-

fell to the floor. The victim reached for the room phone and Tipton "slung it off the counter." The victim tried to grab her cellular phone, and Tipton broke the phone in half. Tipton testified that the argument stopped momentarily; however, they started arguing again. Tipton conceded that during the argument, he choked the victim and struck her on the forehead. After ten minutes of fighting, Tipton fell asleep.

Following the proof at trial, Tipton was convicted of three counts of aggravated rape.

**Sentencing Hearing**. At the sentencing hearing, Tipton's probation officer confirmed that Tipton was on probation when he committed the present offenses. Tipton was on probation for possession of over half a gram of cocaine for resale, possession of marijuana, possession of drug paraphernalia, and maintenance of a dwelling where controlled substances are sold.

Heath Watson, an inmate, testified that he was attacked by Tipton while in prison. He said the attack occurred on December 11, 2007. Watson stated that Tipton struck him in the eye with a hard plastic cup, causing damage to Watson's eye and face. As a result of the attack, Tipton was charged with and pled guilty to simple assault.

The victim testified and described an incident in which Tipton smashed the windshield of her car. This incident occurred several months before the instant offenses, and Tipton pled guilty to vandalism. The victim testified that the instant offenses caused her physical pain and that she was unable to eat solid food for at least three days. The victim had bruises on her arm and mouth. She experienced emotional issues and was in therapy. The victim believed that Tipton would come after her if he were ever released from jail.

Tipton's father testified that Tipton had been employed in the past and maintained his child support payments. Tipton's friend, Jake Cole, said that Tipton was a hard worker and a good father.

Following the proof at the sentencing hearing, the trial court sentenced Tipton to a twenty-two year term of imprisonment for each conviction, to be served consecutively. The trial court gave "real weight" to Tipton's prior criminal record and the victim's vulnerability as a paraplegic. The trial court also discussed the applicability of several other factors. It addressed whether the victim's injuries were particularly great and whether Tipton hesitated about committing a crime where the risk to human life was high. The trial court questioned whether either factor was applicable. The trial court concluded that it would give "very little weight" to those two factors.

The trial court then addressed the issue of consecutive sentencing. It determined that Tipton was a dangerous offender who acted with little or no regard for human life. The trial court stressed that Tipton choked a woman who was unable to defend herself. It found that consecutive sentencing was needed to protect the public from further misconduct by Tipton. The trial court ordered that two of the sentences be served consecutively for an effective sentence of forty-four years. The trial court found that this sentence reasonably related to the severity of the offenses.

Tipton filed a motion for new trial, which was denied. Tipton filed a timely notice of appeal.

**ANALYSIS**

**I. Sufficiency of the Evidence**. Tipton claims the evidence was insufficient to support the three convictions for aggravated rape. He concedes that he had sex with the victim and that he inflicted physical injuries upon her. Tipton denies, however, that he used force or coercion to sexually penetrate the victim. In response, the State contends a rational juror could have found the elements of the offenses beyond a reasonable doubt. The State asserts that the victim's testimony provided sufficient evidence that the sexual penetration was not consensual. Upon review, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." The requirement that guilt be found beyond a reasonable doubt is applicable in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977) and Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The Tennessee Supreme Court has adopted the United States Supreme Court standard that direct and circumstantial evidence should be treated the same when reviewing the sufficiency of the evidence. See State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." State v. Philpott, 882 S.W.2d 394, 398 (Tenn. Crim. App. 1994) (citing State v. Cabbage, 571 S.W.2d 832, 836 (Tenn. 1978), superseded by statute on other grounds as stated in State v. Barone, 852 S.W.2d 216, 218 (Tenn. 1993)). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

In order to prove the essential elements of aggravated rape as alleged in the indictment, the State had to prove beyond a reasonable doubt that Tipton unlawfully sexually penetrated the victim and caused bodily injury. See T.C.A. § 39-13-502(a)(2) (2007). Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" T.C.A. § 39-13-501(7) (2007). Although the term "unlawful" is not defined in sexual offense statutes, it generally refers to non-consensual acts. See State v. Jones, 889 S.W.2d 225, 226-27 (Tenn. Crim. App. 1994); see also State v. Robert Lee Miller, No. E2008-01945-CCA-R3-CD, 2010 WL 4684465, at *10 (Tenn. Crim. App., at Knoxville, Nov. 17, 2010). Bodily injury includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." T.C.A. § 39-11-106(a)(2) (2007).

In viewing the record, the evidence supports the three convictions for aggravated rape. The victim testified that Tipton penetrated her vagina, anus, and mouth with his penis. She repeatedly told Tipton that she did not want to have sex. When she attempted to call the police, Tipton ripped the room phone from the wall and broke her cellular phone. The victim testified that during the rapes, Tipton hit her numerous times and tried to choke her. The emergency physician and the sexual assault nurse examiner described in detail the injuries to the victim's face, eye, arms, neck, and wrists. The victim also described her injuries at trial. The foregoing evidence is more than sufficient to show that Tipton sexually penetrated the victim three times without her consent. The evidence also established that the victim suffered bodily injury while she was raped.

Tipton claims the State failed to prove that the sexual penetrations were non-consensual. His primary argument is that "there was no physical proof to substantiate [the victim's] allegations that she was raped." This argument is unavailing. We recognize that there was no physical evidence of injuries to the victim's vagina, anus, or rectum. However,

as stated by the nurse clinician, the absence of injury is not inconsistent with sexual assault. Moreover, the victim's testimony as well as the evidence of the victim's other injuries show that the sexual penetration was non-consensual. The jury made the determination that the victim, rather than Tipton, was a credible witness. This court will not override such credibility determinations. See Odom, 928 S.W.2d at 23. A rational juror could have determined that Tipton unlawfully penetrated the victim anally, vaginally, and orally, causing the victim serious bodily injury. Accordingly, Tipton is not entitled to relief on this issue.

**II. Double Jeopardy**. Tipton claims the three convictions for aggravated rape are multiplicitous and should be merged into a single conviction. He asserts that merger is proper because the offenses occurred in the same location and were separated by mere seconds. Tipton also contends the offenses resulted from a singular effort to gain sexual gratification. Tipton acknowledges that this issue was not directly raised in the motion for new trial. He asserts, however, that the failure to merge the convictions amounted to plain error. The State agrees that plain error review is appropriate. The State argues that the three convictions were warranted because Tipton penetrated three different orifices of the victim's body and acted with a newly formed intent with each type of penetration. Upon review, we conclude the three convictions should not be merged.

As a preliminary matter, we must address the absence of the double jeopardy claim from the motion for new trial. In the motion, Tipton was required to raise all issues in which the applicable remedy would be a new trial. See T.R.A.P. 3(e); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). However, Rule 3(e) operates as a waiver of only those issues in which a new trial is the remedy for the error. A new trial is not the remedy for a double jeopardy error; instead, a reversal of the conviction and a dismissal of the relevant charge or a merger of the two counts that violate double jeopardy is the proper remedy. See State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997); see also State v. John Barlow, No. W2008-01128-CCA-R3-CD, 2010 WL 1687772, at *12 (Tenn. Crim. App., at Jackson, Apr. 26, 2010), perm. to appeal denied (Tenn. Sept. 24, 2010). Regardless, a double jeopardy concern is also subject to plain error review. Tenn. R. App. P. 36(b) (providing that "[w]hen necessary to do substantial justice, [this] court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal").

Turning to the double jeopardy issue, we note that the double jeopardy clause of the United States Constitution and article I, section 10 of the Tennessee Constitution prohibit placing a person in jeopardy twice for the same offense. U.S. Const. amend. V; Tenn. Const. art I, § 10. Three fundamental protections are encompassed in the principle of double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for

the same offense. State v. Thompson, 285 S.W.3d 840, 847-48 (Tenn. 2009) ( citations and internal quotation marks omitted). The concern in the instant case is the third category of double jeopardy protection, multiple punishments for the same offense, otherwise known as multiplicity.

Generally, "[m]uliplicity concerns the division of conduct into discrete offenses, creating several offenses out of a single offense." State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996). In examining issues of whether there is a multiplicity concern, our courts are guided by the following principles:

> 1. A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the basis for more than one criminal prosecution;

> 2. If each offense charged requires proof of a fact not required in proving the other, the offenses are not multiplicitous; and

> 3. Where time and location separate and distinguish the commission of the offenses, the offenses cannot be said to have arisen out of a single wrongful act.

Id. (footnotes omitted).

In Phillips, the defendant was convicted of three counts of aggravated rape based on three separate acts of penetration that occurred during a period of several hours. Id. at 663. Specifically, the defendant penetrated the victim's vagina with a plastic object, performed cunnilingus on the victim, then engaged in vaginal intercourse with the victim. Id. at 664. The Phillips court noted that "although separate acts of intercourse may be so related as to constitute one criminal offense, generally rape is not a continuous offense, but each act of intercourse constitutes a distinct and separate offense." Id. (internal quotations omitted). The court observed that different acts of penetration are separately defined in our code. Id.; see also Tenn. Code Ann. § 39-13-501(7) ("'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required."). Additionally, the court stated, "Each act, in our opinion, is capable of producing its own attendant fear, humiliation, pain, and damage to the victim. Each type of penetration requires a purposeful act on the part of the perpetrator." Id. at 665. The court concluded that the defendant committed three separate offenses, stating that each act "required a differed body position and engaged different body parts." Moreover, because the offenses occurred over

-9-

a three-hour time span, the court was "hard-pressed to characterize the [defendant's] conduct as a 'single continuous event.'" Id.

After concluding that the defendant was guilty of three acts of aggravated rape, the Phillips court provided the following list of factors to consider regarding multiplicity in the context of sexual crimes:

> 1. The nature of the act;
>
> 2. The area of the victim's body invaded by the sexually assaultive behavior;
>
> 3. The time elapsed between the discrete conduct;
>
> 4. The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse; and
>
> 5. The cumulative punishment.

Id. at 665. However, the court cautioned that "the presence and absence of any one factor or a combination of them other than the nature of the act is not determinative of this issue." Id.

Subsequently, in State v. Barney, 986 S.W.2d 545, 550 (Tenn. 1999), our supreme court again examined the issue of when two or more sexual acts may sustain separate convictions. In Barney, the defendant argued that his act of rubbing the victim's penis was incidental to an act of fellatio and thus constituted a single crime. Our supreme court cited Phillips with approval. Further, the court stated that if the acts in question were "facilitative" or "incidental," such as applying lubricant, separate convictions would be barred. Barney, 986 S.W.2d at 548. However, if the acts were "preparatory" only in that the acts were designed to arouse the victim or perpetrator, then separate convictions would not be barred. Id. To aid in making this determination, the court provided the following list of factors:

> 1. temporal proximity - the greater the interval between the acts, the more likely the acts are separate;
>
> 2. spatial proximity - movement or re-positioning tends to suggest separate acts;

3. occurrence of an intervening event - an interruption tends to suggest separate acts;

4. sequence of the acts- serial penetration of different orifices as distinguished from repeated penetrations of the same orifice tends to suggest separate offenses; and

5. the defendant's intent as evidenced by conduct and statements.

Id. at 548-49.

In applying the factors enunciated in Phillips and Barney to the instant case, we conclude that the proof supports three separate convictions of aggravated rape. The proof at trial revealed that Tipton aggressively removed the victim's clothes, grabbed her throat, and penetrated her vagina with his penis. Upset at his inability to ejaculate, the appellant penetrated the victim anally. Again unable to ejaculate, the appellant forced the victim to perform fellatio. Although there was no explicit testimony regarding the duration of the offenses, the proof adduced at trial established that approximately two hours elapsed from the time Tipton demanded a key to the victim's room to the time that the victim reported her rape to the hotel employee. Additionally, the victim maintained that "it felt like [the offenses] lasted forever."

In support of his argument that his acts supported, at most, a single act of aggravated rape, Tipton cites State v. Michael D. Evans, No. 03-C01-9703-CR-00104, 1997 WL 772910 (Tenn. Crim. App., at Knoxville, Dec. 9, 1997), aff'd, 108 S.W.3d 231 (Tenn. 2003), and State v. Adrian Arnett, No. 03C01-9811-CR-00395, 2000 WL 122222 (Tenn. Crim. App., at Knoxville, Feb. 2, 2000), aff'd, 49 S.W.3d 250 (Tenn. 2001). In Evans, the defendant engaged in vaginal intercourse with a twelve-year-old victim. Evans, No. 03C01-9703-CR-00104, 1997 WL 772910, at *4. At the start of intercourse, the defendant was positioned on top of the victim. When they changed positions, the victim got on top of the defendant; during the positioning, the defendant was not penetrating the victim. Id. This court concluded that separate convictions were not supported for the penetration in each position because the acts concerned the same "body areas of the victim, were of the same nature, and only seconds elapsed between the two penetrations."

In Arnett, the defendant was convicted of two counts of aggravated rape. Arnett, No. 03C01-9811-CR-00395, 2000 WL 122222, at *6. The victim testified that "the [defendant] tried to put his penis inside of [her], but he couldn't get it in. So he used his finger, and then he tried again and put his penis inside of [her] then." Id. at *7. This court concluded that the defendant's actions supported only a single conviction of aggravated rape, explaining that:

-11-

the penetrations invaded the same body area of the victim, with only seconds elapsing between the two penetrations. Obviously, from the victim's testimony, the digital penetration was merely the means of completing the penile penetration. We are unable to conclude that the intervening seconds between the penetrations provide a sufficient lapse of time so as to permit the development of "a newly formed intent" as the digital penetration only served to facilitate the penile penetration.

The instant case is distinguishable from both Evans and Arnett. In those cases, the vaginal penetration was the actual, punishable act; the repositioning in Evans and the digital penetration in Arnett merely facilitated the vaginal penetration. However, in the instant case, the different penetrations did not serve to facilitate each other. Instead, each penetration was intended to arouse Tipton so that he could ejaculate. As explained in Barney, the serial penetration of different orifices suggests that separate offenses occurred. 986 S.W.2d 548-49. Therefore, we conclude that merger is not appropriate in this case because the principles of double jeopardy are not violated. As in Phillips, we believe that each act of penetration in this case produced its own attendant fear, humiliation, pain, and damage to the victim. 924 S.W.2d at 664-65. Tipton is not entitled to relief on this issue.

**III. Admissibility of Expert Testimony**. Tipton argues that the trial court erred by allowing the emergency room physician, Dr. Lee, to testify about the effect of intoxication on a man's ability to ejaculate. He claims this area of science was outside the field of Dr. Lee's expertise. The State contends Dr. Lee's testimony was admissible based on his medical training and the general understanding that intoxication impedes a man's sexual function. The State also asserts that Tipton failed to establish that he was prejudiced by the testimony. The State notes Tipton's concession at trial that he was unable to ejaculate because he was too intoxicated. Upon review, we conclude the trial court did not err by admitting Dr. Lee's testimony.

"Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court." State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002) (citing McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 263-64 (Tenn. 1997); State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993)). Upon review, a trial court's ruling regarding expert testimony will not be overruled unless the trial court abused its discretion. Ballard, 855 S.W.2d at 562 (citing Baggett v. State, 421 S.W.2d 629, 632 (Tenn. 1967)). Under this standard, we will not reverse unless the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

Rule 702 of the Tennessee Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." The witness's necessary expertise may be acquired through formal education or life experiences. Neil P. Cohen et al., Tennessee Law of Evidence § 7.02[4] (LEXIS publishing, 5th ed. 2005). However, the witness must possess such superior skill, experience, training, education, or knowledge within the particular area that his or her degree of expertise exceeds the scope of common knowledge and experience possessed by the average person. Id.

In this case, the trial court found that Dr. Lee was an expert in emergency medicine. The State asked Dr. Lee whether intoxication can inhibit a man's ability to ejaculate. He responded, "Yes, I do believe so." Defense counsel objected, claiming the question exceeded the field of Dr. Lee's expertise. The trial court overruled the objection and determined that the subject matter was within the purview of emergency medicine.

Upon review, we conclude that the trial court did not abuse its discretion by admitting Dr. Lee's testimony. Dr. Lee testified that he was an emergency room physician who had experience with intoxicated patients. His education and experience provided a reasonable ground to believe that his knowledge about the effect of alcohol on the body exceeded the knowledge of the average person. As the trial court's finding was not against logic or reason, there was no abuse of discretion. See Shirley, 6 S.W.3d at 247. Furthermore, the admission of Dr. Lee's testimony did not cause an injustice to the defense. Id. Tipton later conceded at trial that he was unable to ejaculate because he was too intoxicated. Tipton is not entitled to relief on this issue.

**IV.** **Sentencing**. Tipton claims the sentence length for each conviction was excessive. He argues that the trial court misapplied two enhancement factors under Tennessee Code Annotated section 40-35-114. Tipton contends enhancement factor (6) was inapplicable because the victim's personal injuries were not particularly great. He claims enhancement factor (10) was inapplicable because the offenses did not pose a risk to human life. Tipton also asserts that the trial court should have considered his employment history, work ethic, and strong family support system as mitigating factors. In response, the State argues that the trial court did not err by sentencing Tipton to twenty-two years for each conviction. Upon review, we agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2007). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial

court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Our review is de novo, without a presumption of correctness, if the trial court applied inappropriate mitigating or enhancement factors or otherwise failed to follow the principles of the Sentencing Act. State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008). The defendant, not the State, has the burden of showing the impropriety of the sentence. T.C.A. § 40-35-401(d) (2006), Sentencing Commission Comments.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See T.C.A. § 40-35-210(b) (2007); see also State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002); State v. Osborne, 251 S.W.3d 1, 24 (Tenn. Crim. App. 2007).

The Tennessee Supreme Court has stated that the 2005 Amendments to the Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Carter, 254 S.W.3d at 344. In sentencing a defendant, the trial court must consider the sentencing guideline that suggests an adjustment to the defendant's sentence when enhancement or mitigating factors are present; however, these factors under the guideline are merely advisory rather than binding upon a trial court's sentencing decision. Id.; see also T.C.A. § 40-35-210 (2007). The weight given to each enhancement or mitigating factor is left to the sound discretion of the trial court. Id. Thus, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

In this case, Tipton was sentenced as a standard offender to twenty-two years for each count of aggravated rape. The applicable sentencing range for aggravated rape, a Class A felony, is between fifteen and twenty-five years. See T.C.A. §§ 40-35-112(a)(1); 40-35-105. Tipton is required to serve 100 percent of his sentences as a multiple rapist. See T.C.A. §§ 39-13-523(b), (c) (Supp. 2009) and 40-35-501(i)(3). The trial court determined that the sentences were appropriate based on the presence of two enhancement factors under Tennessee Code Annotated section 40-35-114. It found that enhancement factor (1) was present based on Tipton's criminal record. The record shows that Tipton, who was sentenced as a Range I offender, has prior convictions for assault, vandalism, driving on a revoked

license, possession of over half a gram of cocaine for resale, possession of marijuana, possession of drug paraphernalia, and maintenance of a dwelling where a controlled substance is sold. The trial court also determined that enhancement factor (4), whether the victim "was particularly vulnerable because of age or physical or mental disability," was met. T.C.A. § 40-35-105(4). The trial court found that the victim was particularly vulnerable because she was a paraplegic.

The trial court also addressed enhancement factors (6) and (10) in its findings. These enhancements factors state as follows:

> (6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great;

> (10) The defendant had no hesitation about committing a crime when the risk to human life was high[.]

T.C.A. § 40-35-114. The trial court questioned whether either enhancement factor was applicable. It stated that it would give "very little weight" to both factors. The trial court made clear, however, that it only gave "real weight" to enhancement factors (1) and (4).

Tipton claims on appeal that the trial court should not have applied enhancement factors (6) and (10). We agree that these enhancement factors were inapplicable to the present case. However, because the trial court afforded them minimal if any "real weight," we cannot conclude that the trial court erred by imposing a twenty-two year sentence for each conviction. The record shows that enhancement factors (1) and (4) were applicable and that no mitigating factors were present under section 40-35-113.

Finally, Tipton argues that the trial court should have considered his employment history and his family support system under the catch-all provision of mitigating factor (13). We note that the trial court's findings show that it considered Tipton's past employment and his family situation. Tipton failed to establish that his sentences were improper. Accordingly, he is not entitled to relief on this issue.

**V. Consecutive Sentencing**. Tipton claims the trial court abused its discretion by ordering that two of his sentences be served consecutively. He argues that the trial court improperly found he was a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4). The State contends several grounds under section 40-35-115(b) supported the imposition of consecutive sentencing. The State claims Tipton's treatment of the victim showed that he was a dangerous offender. The State also asserts that Tipton had an extensive

criminal record and committed the offenses while on probation. Upon review, we agree with the State.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2007). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven criteria in section 40-35-115(b). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1) (2007). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2) (2007). When the trial court bases its decision to require sentences to be served consecutively on its finding that the defendant is a dangerous offender, it must make additional findings regarding the severity of the crimes committed and the necessity to protect the public from further criminal acts by the defendant. State v. Banks, 271 S.W.3d 90, 147 (Tenn. 2008); State v. Allen, 259 S.W.3d 671, 689 (Tenn. 2008); State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999).

In this case, the trial court found that criterion (4) was applicable under section 40-35-115(b). Criterion (4) states:

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]

The trial court determined that Tipton was a dangerous offender based on his treatment of the victim during the attack. It considered that Tipton tried to choke the victim even though she was a paraplegic and unable to defend herself.

In viewing the evidence, the trial court did not err by imposing consecutive sentencing. The victim's testimony showed that Tipton acted with little regard for human life and did not hesitate to commit crimes in which the danger to human life was high. The victim said Tipton came into her hotel room while she was asleep and violently removed her clothes. She stated that during the rapes, Tipton grabbed her throat and tried to choke her. The victim struggled to breathe and may have lost consciousness. She testified that Tipton hit her "harder and harder" after he was unable to ejaculate. During the rapes, Tipton said he was going to jail because of his actions. The victim testified that Tipton repeatedly threatened to tie her up, gag her, and run away. The victim thought she was going to die. The malevolence of Tipton's actions is only worsened by the victim's vulnerability as a paraplegic. Testimony was also presented at the sentencing hearing about Tipton's propensity for violence on other occasions. An inmate testified that he was assaulted by

Tipton in prison. Additionally, the victim said Tipton intentionally broke the windshield of her car. In considering the foregoing evidence, we conclude that Tipton was a dangerous offender under criterion (4). The record shows that two other grounds supported the imposition of consecutive sentencing. Under criterion (6), Tipton committed the aggravated rapes while on probation. Under criterion (2), Tipton had an extensive criminal record that included at least seven convictions. See T.C.A. § 40-35-115(b)(2), (4), and (6).

Because at least one of the criteria was applicable under 40-35-115(b), the trial court did not err by imposing consecutive sentences. Additionally, the trial court determined that consecutive sentencing was necessary to protect the public from further misconduct by Tipton and that the forty-four year sentence was reasonably related to the severity of the offenses. State v. Lane, 3 S.W.3d at 461. Tipton has not shown that the trial court erred by imposing the forty-four year sentence. Therefore, he is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE